Lamar HALL, Executor *v.* Helen Strohl HALL

82-9                                     631 S.W.2d 838

Supreme Court of Arkansas
Opinion delivered May 3, 1982

*Randall L. Gammill,* for appellant and cross-appellee.

*House, Holmes & Jewell, P.A.,* by: *Philip E. Dixon* and *Daryl G. Raney,* for appellee and cross-appellant.

DARRELL HICKMAN, Justice. The question to us on appeal is the ownership of an $18,000 certificate of deposit and a $5,000 savings account. The same question was presented to the trial court after both parties moved for summary judgment on what can be fairly said are agreed facts.

The certificate of deposit was originally issued in the names of Charles L. Hall or Helen Hall, who were husband and wife. Subsequently, Charles L. Hall, without the knowledge of his wife, Helen, asked the bank to change the certificate and her name was deleted upon his oral request. The probate court held that this was an improper change according to statutory law and the issuance of the certificate to Mr. and Mrs. Hall created an estate by the entirety; thus, Mrs. Hall was entitled to the proceeds since Mr. Hall was deceased. The $5,000 savings account was opened in Charles L. Hall's name alone, at the same time the certificate was issued. The court held that this account was the property of Charles L. Hall's estate since it was initially opened in his name only. Both Mrs. Hall and the estate appeal from the probate judge's ruling; each party is seeking all the money. We affirm the trial court.

Charles L. Hall and Helen Hall were married April 7, 1977. In September of 1977, Mr. Hall had his individual checking account at the First State Bank of Lonoke changed to a joint account in the name of "Mr. or Mrs. Charles L. Hall (Helen L.)." On April 11, 1978, he purchased a $30,000 certificate of deposit in the name of "Charles L. or Helen L. Hall." He told Mrs. Hall he had placed $30,000 in savings in both names. The certificate matured in April, 1979, and Charles L. Hall cashed it for $31,840.00 and purchased a new certificate of deposit for $25,000.00. It was issued just like the former certificate. The balance of the money was deposited in the joint checking account. The $25,000.00 certificate matured in October, 1979, and the maturity sum, $26,059.59, was deposited in their joint checking account. The next day, Mr. Hall drew a $23,000.00 check on their account and purchased the $18,000.00 certificate of deposit in question. With the remaining $5,000.00 he opened the individual savings account in question in his name only.

Mrs. Hall said she was shown the $18,000.00 certificate, and saw both their names on it. She said Mr. Hall placed it in a drawer, specifically telling her that it was there if she ever needed it or wanted it. She said it was only after his death that she examined the certificate and found it had been changed. Unknown to his wife, Mr. Hall had taken the

certificate to the bank and requested a bank official to alter it to read Charles L. Hall. Her name was erased and the certificate altered to so read. It was initialed by the bank official.

It was undisputed that the money used to buy all these certificates was Mr. Hall's funds; Mrs. Hall made no contributions at all. While she wrote a check occasionally, Mr. Hall managed the checking account. She did not allege she was denied access to any of these transactions.

The trial court was right in holding that the alteration of the certificate of deposit was contrary to law. Ark. Stat. Ann. § 67-552 (g) requires that in order to change the designee of an account there must be written directions accepted by the banking institution. *Lovell* v. *Marianna Federal Savings & Loan,* 264 Ark. 99, 568 S.W.2d 38 (1978). There is no doubt the Halls held the certificate as tenants by the entirety, and since that estate was not legally changed, it remained so. The proceeds are Mrs. Hall's. But the estate argues that Ark. Stat. Ann. § 67-552 requires written instructions *before* such an estate can be created in such an instrument, and since there were no written instructions to the bank to issue these instruments, no estate by the entirety was ever created. We held in *Cook* v. *Bevill,* 246 Ark. 805, 440 S.W.2d 570 (1969) that no such instructions are necessary when issuance is to husband and wife.

The $5,000.00 savings account was properly issued in Mr. Hall's name only; it was never altered and the trial court held that it belonged to the estate. Mrs. Hall argues that since the checking account was in the name of Mr. & Mrs. Hall, it was their joint property as were the certificates of deposit bought from the funds in that checking account; therefore, the funds got from the redemption of the $25,000.00 certificate of deposit, $5,000.00 of which was deposited in Charles Hall's savings account, were also joint property. Mr. Hall properly drew the checks on their checking account to purchase the certificates and those certificates were properly issued and redeemed. Mr. Hall opened the savings account with part of those funds and, therefore, the account was not illegally or improperly created. Mrs. Hall was never denied

access to the checking account and the last transactions occurred over five months before Mr. Hall died. She certainly could have known of all the transactions regarding the checking account if she chose to. *See Lovell* v. *Marianna Federal Savings & Loan, supra.* Based on such a state of undisputed facts the trial court properly ruled that as a matter of law the savings account was not jointly held and was the property of the estate.

The estate argues that the probate court did not have jurisdiction since this was a dispute over the title to the accounts, a subject for litigation in chancery court. This argument is premised on the fact that since Mrs. Hall could not receive her dower interest because of our decision in *Hall* v. *Hall,* 274 Ark. 266, 623 S.W.2d 833 (1981), she was a stranger to this action and, therefore, any dispute between her and the estate belonged in chancery. The simple fact that Mrs. Hall was denied certain rights by operation of law did not make her a legal stranger to this case. She was still his widow and the claim was properly adjudicated by the trial court.

Affirmed.