

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-15-1002

| | |
|---|---|
| GREGORY SCOTT    **APPELLANT** <br><br> V. <br><br> WALTER SCOTT    **APPELLEE** | **OPINION DELIVERED** SEPTEMBER 14, 2016 <br><br> APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRD DIVISION [NO. 60CV-09-5606] <br><br> HONORABLE CATHLEEN V. COMPTON, JUDGE <br><br> AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

**ROBERT J. GLADWIN, Chief Judge**

Appellant Gregory Scott (Greg) appeals the July 10, 2015 order of the Pulaski County Circuit Court, which divided the remaining money in the Jane B. Scott Family Trust (Trust) and found that Greg's brother, appellee Walter Scott, while in violation of the *in terrorem* clause of the Trust, would not be penalized because Greg was also in violation of the clause. On appeal, Greg argues that the trial court erred in (1) denying his motion to deem facts admitted; (2) refusing to punish Walter for violating the *in terrorem* clause; and (3) awarding him only $11,750 for labor and materials. We affirm in part and reverse and remand in part.

Walter filed a petition for accounting against Greg on August 13, 2009, as cotrustee of the Trust, which had been established by their mother. He alleged that Greg had repeatedly made decisions regarding Trust assets without proper input or permission from him as required by the Trust. Greg responded with an emergency petition for sale of the

family home, alleging that Walter had agreed to transfer the home to Greg in exchange for $130,000 from the estate, and Walter had received the money and had cashed the check but would not sign the deed over to Greg. Greg ceased work on the house for a time but began improvements on it again without an agreement from Walter. He also claimed that Walter's filing for an accounting was an adverse action against the Trust, invoking the *in terrorem* clause, alleging that Walter already possessed all of the information on the Trust.

The clause states:

> Should any person mentioned herein but excluded from distribution, or any beneficiary, including any beneficiary under powers of appointment exercised herein, become an adverse party in the administration of Grantor's Estate or Trust, including the valuation and distribution of Grantor's Estate, such person shall forfeit his or her entire interest and his or her issue's interest in Grantor's Estate or Trust inherited from Grantor, and such interest shall pass as part of the residue of Grantor's Trust Estate; provided, however, that if such person is a beneficiary of the residue, his or her interest shall be divided proportionately among the other beneficiaries of the residue. This paragraph shall not be construed to limit the appearance by any beneficiary as a witness in any proceeding for the probate of Grantor's Will or the administration of Grantor's estate or Trust, nor to limit his or her appearance in any capacity in a proceeding for construction of Grantor's wishes.

An order was filed on March 7, 2011, wherein Greg and Walter agreed to sell the home; Greg would provide the accounting; Walter would review it and obtain his own accounting if necessary; both would provide proof of payments made to Taylor Galusha (Walter's daughter and a beneficiary of the Trust); Greg would retain the right to attempt to collect his costs and labor for remodeling the house; and both would provide proof of their expenses.

Taylor moved to intervene as a necessary party. She was granted intervention by order filed December 9, 2011. She filed a complaint on December 16, 2011, alleging that she was entitled to $50,000 under the Trust; that she wanted an accounting; that a

declaration that the IOU she was forced to sign by Walter and Lani, his wife, was void; and that Walter should be removed as cotrustee.

On March 9, 2012, Greg filed requests for admissions against Walter, and on that same date, Greg filed his second amended response and amended counterpetition, alleging that Walter had not paid the real property taxes on the family home and that Greg had paid $8000 for insurance, termite coverage, electricity, gas, and water for the home since 2004. Greg also sought reimbursement for refurbishing/remodeling the family home, and he alleged that Walter had violated the *in terrorem* clause by filing an unnecessary petition for an accounting, alleging that the accounting petition was filed "solely as a pretext to litigate with less financially advantaged beneficiaries with the intent of holding them hostage with litigation until they settle under terms unpermitted by the Trust just to obtain funds they are entitled to."

On April 2, 2012, Walter's attorney filed a "Notation of Forwarding Plaintiff's Responses to Requests for Admission to Defendant's Counsel," stating that the responses were sent to Greg's attorney, Susan Gunter, on that date. On October 27, 2014, an order for substitution was filed, substituting R. David Lewis for Susan Gunter as Greg's attorney.

On January 16, 2015, Greg filed a motion to deem facts admitted, alleging that Walter's failure to deny the requests for admissions deemed them admitted. He cited *Duncan v. Olive*, 2014 Ark. App. 152, and *Hardesty v. Baptist Health*, 2013 Ark. App. 731, 431 S.W.3d 327, both of which hold that it was not an abuse of discretion for the trial court to deem admitted the requests for admissions when the responses were not filed as required under the applicable rules of civil procedure. Walter responded that he had timely submitted

his response to Greg and that Greg's lawyer had received them. Greg replied that it was of no consequence whether his attorney had received them, it mattered only that Walter did not file his responses. The trial court filed an order on April 10, 2015, stating that the notice filed on April 2, 2012, in which Walter alerted the trial court that the responses had been served, complied with the filing notice required by the rules; thus, the motion to deem facts admitted was denied.

The trial began on April 13, 2015, but did not conclude until June 22, 2015. On May 1, 2015, Greg filed a motion to remove Walter as cotrustee, alleging that he had violated his duty as trustee, placed his own interests above his duties as trustee, and that he thought Walter would continue to frustrate the intent of the trust. Attached to the motion were portions of the transcript from the partial trial held on April 13. On May 7, 2015, Walter filed a motion to strike, stating that "the pleading portion of this case was closed by the Court when this matter was set for trial on April 13, 2015."

During the trial, Greg testified as follows:

They're the receipts for the materials that I purchased to upgrade Oaklawn to get it in a sellable shape. I paid those myself out of my personal account. The approximate total of the expenses is $12,000. I installed a new stained glass door, tiled the bathrooms, replaced wallpaper and painted walls, ceilings, and cabinets, installed new countertops, sink, faucet, refitted the cabinets with new hardware, hinges and pulls, replaced the vinyl flooring with a ceramic tile floor, re-sheet rocked the bathroom, installed a new whirlpool, electrical work and plumbing. I paid $800 for the Jacuzzi tub. I installed a bathroom vanity, upgraded the lights on the ceiling and above the vanity with new light fixtures and installed a new toilet. I also added a new sink and toilet to the bathroom in the master bedroom. I put in a set of French doors. I also put in a deck . . . I spent 465–470 hours on the house . . . I charge twenty five dollars per hour for everything I do . . . I was working on a Trust asset which was not in good enough shape to sell . . . My labor is 470 hours at twenty-five dollars per hour which is somewhere right under $12,000. The materials I used on the house was approximately $12,000. The total for materials was $11,404.46.

The trial court's order of July 10, 2015, recites the history of the case and sets forth the *in terrorem* clause. The order also lists the items placed in evidence by both parties, including that

> Greg introduced copies of invoices from Home Depot and other places showing the amounts of money he had spent on Jane's house as well as an exhibit showing bills he had paid for Jane's house, including North Little Rock Electric, Arkla Gas, Central Arkansas Water, a termite control service, State Farm Insurance, and a lawn maintenance service.

The trial court ruled that Taylor was to receive $13,000 from the remaining $126,761.73 left in the Trust and that she did not owe Walter any money. The court directed that the CPA bill of $3365 be paid; that Greg would receive credit for "the maintenance and upkeep on Jane's house in the sum of $12,945.13. . . . Greg shall be given credit in the sum of $11,750 for labor and expenses on Jane's house." Walter was given credit for the $4000 he spent on his mother's funeral. Finally, the trial court found that Walter had violated the *in terrorem* clause but that he "did not do so in order to hurt his brother, Taylor, or the Trust assets, so he will not be penalized for his violations." The trial court held that neither Walter nor Greg abided by their mother's wishes or the terms of the Trust, "so the *in terrorem* clause violations would apply to both Walter and Greg if the Court were going to enforce it." The trial court ordered that the remaining money be divided between Walter and Greg and the estate closed.

Greg filed a motion for reconsideration on July 15, 2015, and the trial court did not rule on it. Greg filed a notice of appeal on September 9, 2015. This appeal timely followed.

SLIP OPINION

I. *Requests for Admissions*

The Arkansas Rules of Civil Procedure provide as follows:

> All papers after the complaint required to be served upon a party or his attorney shall be filed with the clerk of the court either before service or within a reasonable time thereafter. The clerk shall note the date and time of filing thereon. However, proposed findings of fact, proposed conclusions of law, trial briefs, proposed jury instructions, and responses thereto may but need not be filed unless ordered by the court. Depositions, interrogatories, requests for production or inspection, and answers and responses thereto shall not be filed unless ordered by the court.

Ark. R. Civ. P. 5(c)(1) (2015).

Greg contends that the trial court erred in failing to deem facts admitted when Walter failed to file his responses to Greg's requests for admissions. The trial court's order found sufficient compliance with the Arkansas Rules of Civil Procedure because Walter's counsel alerted the court and opposing counsel on April 2, 2012, that the responses had been served. Greg contends that nothing in Rule 36 of the Arkansas Rules of Civil Procedure, which governs requests for admissions, states that substantial compliance is sufficient. He cites *Duncan*, *supra*, and *Hardesty*, *supra*, in both of which this court held that it was not an abuse of discretion for the trial court to deem admitted the requests for admissions at issue.

Our standard of review applicable in discovery matters is set forth as follows:

> A trial court has broad discretion in matters pertaining to discovery, and the exercise of that discretion will not be reversed by the appellate court absent an abuse of discretion that is prejudicial to the appealing party. *Deering v. Supermarket Investors, Inc.*, 2013 Ark. App. 56, at 7, 425 S.W.3d 832, 836. To have abused its discretion, the trial court must have not only made an error in its decision, but also must have acted improvidently, thoughtlessly, or without due consideration. *Id.*

*Hardesty*, 2013 Ark. App. 731, at 4–5, 431 S.W.3d at 330.

Walter contends that there was no abuse of discretion. We agree. The trial court duly considered that Greg had an opportunity to cross-examine Walter regarding the requests for admissions; the trial court stated in a footnote "that the bulk of the Requests have been admitted by the Plaintiff"; and the trial court considered that Walter's notice of submission of responses filed on April 2, 2012, alerted the court and opposing counsel that responses had been served on all counsel of record. Accordingly, we hold that the trial court's finding that Walter had complied with the Arkansas Rules of Civil Procedure was not an abuse of discretion.

## II. *In Terrorem Clause*

Our standard of review in trust cases was set forth as follows in our recent case *Holliman v. Johnson*, 2016 Ark. App. 39, at 6–7, 480 S.W.3d 903, 907–08:

> The exclusive jurisdiction in cases involving trusts, and the construction, interpretation, and operation of trusts are matters within the jurisdiction of the courts of equity. *Rose v. Rose*, 2013 Ark. App. 256, 427 S.W.3d 698; *Winchel v. Craig*, 55 Ark. App. 373, 934 S.W.2d 946 (1996). Arkansas appellate courts have traditionally reviewed matters that sounded in equity de novo on the record with respect to factual and legal questions. *Rose, supra; In re Ruby G. Owen Trust*, 2012 Ark. App. 381, 418 S.W.3d 421. A finding by a circuit court in an equity case will not be reversed unless it was clearly erroneous. *Id.*

*Cason v. Lambert*, 2015 Ark. App. 41, at 4, 454 S.W.3d 250, 253–54.

> [A] finding of fact by a trial court sitting in an equity case is clearly erroneous when, despite supporting evidence in the record, the appellate court viewing all the evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* We also give due deference to the superior position of the chancellor or circuit court to view and judge the credibility of the witnesses. *Id.*

*In re Estate of Thompson*, 2014 Ark. 237, at 6, 434 S.W.3d 877, 881.

Greg claims that it was error for the trial court to not punish Walter because he violated the *in terrorem* clause. The trial court determined that, because Walter did not violate the clause in order to hurt Greg, Taylor, or the Trust's assets, he would not be punished. Further, the trial court found that Greg did not abide by the terms of the Trust. Greg argues that, during cross-examination, Walter admitted that, when he refused to give Taylor the money she asked for unless she gave him an IOU, he became an "adverse party" to the Trust. Greg argues that the trial court added a condition to the *in terrorem* clause that did not exist—that in order to forfeit one's interest, the trustee had to violate the *in terrorem* clause in order to hurt his brother, Taylor, or the Trust assets. Further, Greg contends that the record does not support the trial court's finding that Greg did not abide by his mother's wishes or the terms of the Trust. He argues that Walter never accused him of violating the *in terrorem* clause and nothing in the record showed that he had violated the terms of the Trust. Therefore, Greg insists that the clause should be enforced against Walter.

Walter contends that his actions regarding a possible violation of the *in terrorem* clause were predicated on Greg's actions. Based on our de novo review, we hold that the trial court's finding regarding the *in terrorem* clause is not clearly erroneous. Greg's actions in contesting the request for an accounting, and the characteristics of the lawsuit that were conveyed in the pleadings and during the trial, support the trial court's determination that neither Walter nor Greg abided by their mother's wishes or the terms of the Trust. Giving due deference to the trial court's superior position to view and judge the credibility of the witnesses, we affirm the trial court's decision to not enforce the *in terrorem* clause against Walter.



### III. *Labor and Expenses*

Greg contends that the uncontroverted proof was that he spent labor valued at $11,750, and materials in the amount of $11,404.46. But, the trial court made an award for labor and materials of only $11,750. He argues that there has to be evidence to support an award or the award should be set aside. Walter contends that the value of any work done by Greg to the Trust property is within the sound discretion of the trial court based on the evidence presented. He submits that there was no clerical error. He contends that the trial court provided Greg with adequate compensation for his labor and expenses.

We disagree. Arkansas statutory law provides explicitly for a trustee's reimbursement of expenses, providing that "a trustee is entitled to be reimbursed out of the trust property . . . for reasonable expenses that were properly incurred in the administration of the trust[.]" Ark. Code Ann. § 28-73-709(a)(1) (Repl. 2012); *see also Rose, supra*. Further,

> [i]n an appeal from a bench trial, where we are unable to determine the basis for the trial court's award of damages, we may remand for the limited purposes of clarifying the method used to determine damages and to correct any erroneous calculations. *See Glover v. Woodhaven Homes, Inc.*, 346 Ark. 397, 57 S.W.3d 211 (2001).

*Pruitt v. Dickerson Excavation, Inc.*, 2010 Ark. App. 849, at 8, 379 S.W.3d 766, 772. The trial court awarded the uncontroverted amount submitted by Greg for his labor costs but ignored the uncontroverted amount submitted for reimbursement for materials. Without an explanation of the trial court's reasoning, and in light of the trial court's reference to expenses incurred at Home Depot, we cannot know whether the court intentionally awarded the exact labor costs but excluded the entire amount of materials when the court awarded $11,750 for "labor and expenses." Accordingly, we reverse and remand for further consideration of the award for "labor and expenses."

 

Affirmed in part; reversed and remanded in part.

HOOFMAN and BROWN, JJ., agree.

*R. David Lewis*, for appellant.

*Michael U. Sutterfield*, for appellee.